10592.

## ROBERTS vs. COLUMBIA RAILWAY & NAVIGATION CO.

(106 S. E. 505)

MASTER AND SERVANT—EVIDENCE INSUFFICIENT TO SHOW DEFECTIVE APPLIANCES CAUSED INJURY TO WORKMAN ON BOAT.—In an action for injuries to the employee of a railway and navigation company when he left the boat on which he was employed, which had broken loose, so that he was subjected to exposure, evidence *held* insufficient to show that plaintiff would have been injured if he had remained on the boat where he agreed to work, showing instead that he was taken off the boat and put in a place of safety by a government boat, and voluntarily left such place, an island, and walked into the water to leave it, getting wet, and so sustaining injury.

Before TOWNSEND, J., Richland. May term, 1919.

Reversed.

Action by L. R. Roberts against Columbia Railway and Navigation Co. for personal injuries. From judgment for plaintiff the defendant appeals.

*Messrs. J. Fraser Lyon* and *T. H. Moffatt,* for appellant, cite: *Plaintiff assumed the risk*: 80 S. C. 232, 61 S. E. 391; 18 R. C. L. 676. *Intervening cause*: 101 S. C. 62-3. *Plaintiff was not in such imminent peril as to* warrant his leaving the drifting boat: 18 S. E. 748-52.

*Jas. H. Hammond, Esq.,* for respondent. Oral argument.

March 22, 1921.

The opinion of the Court was delivered by Mr. JUSTICE FRASER.

"I live in Richland county. During the month of January, 1915, I was employed by the Columbia Railway & Navigation Company, for the purpose of keeping the logs and rafts off the boat Ruth No. 2, which boat was owned by the said company. This was in the winter time, and the river was very high, and there was a snow storm. I was

sent for one afternoon, and undertook the employment. One of the watchmen at the bank came for me. I went down to the bank, and Mr. Shannon met me with a small boat and took me to the large boat; he and Mr. Parr were keeping logs and drifts off the large boat, the Ruth No. 2. I then went out in the Ruth No. 2, when they came to the bank and got me. They wanted me to keep the logs and rafts off which were coming down the river. The river was flooded, and when it floods the logs and that kind of matter drift down and must be kept away from the boat, else it might cause the boat to break loose. During that night I would keep the rafts and logs from accumulating by going down from the upper deck every time one would strike and taking a pole and punching it off. I punched some off that night. Nothing happened to the boat until about 12 that night. * * * About 12 o'clock on this night Parr, Shannon and myself were on the upper deck eating peanuts and sitting by a heater when something struck the boat. We immediately went down, but before we could get there the boat had broken loose and was drifting down the river. These boats are each about 150 feet long and 25 or 30 feet wide. When the boat broke loose we all got frightened. The boat floated down stream about three-fourths of an hour, when we were rescued by a government boat and then taken by this boat to an island. After landing on this island we tried to wade to the main shore. They said, 'We are going.' I said, 'I will have to follow; I won't stay by myself.' I did not get wet until after I landed on this island and tried to wade to the mainland. I could not make it to shore, and had to climb a tree, and I stayed there until help came. I was in this tree until daylight, at about which time the government people sent a stove and blankets. The government boat did not overturn. I stayed in wet clothes until I got home, which was about 10 o'clock. Each of these boats was about 150 feet long and 25 or 30 feet wide. They were

514      Roberts *v*. Cola. Ry. & Nav'n. Co.

Opinion of the Court.    [115 S. C.—512]

tied together. The Ruth No. 2 to a cottonwood tree about six inches in diameter. I was frightened going down stream. I saw an anchor and rope in this boat. The cabin which we were in was 14 feet or higher from the lower deck. There are no curves in the stream. That night it was so dark we could not see. I was in water and up a tree about eight or nine hours. I did not want to stay on this island by myself was the reason why I left. I did not go to bed on account of this experience for about two weeks, and during this two weeks I was cutting wood and staying around a woodyard; afterwards I did some light carpenter work."

Plaintiff brought suit for the injury and alleges:

"That the aforementioned injuries and damages suffered by the plaintiff are all directly resultant from the defendant's failure to provide a reasonably safe and sound place for him to work and in failing to provide appliances on the said boat that were sound, in that the defendant failed to lash the boat to a substantial tree or anchor on the land, and on the contrary had it tied to a small and insufficient tree that was unable to hold the boat, and also in that the defendant used old, worn, and rusty and defective cables lashing the boat and the other boat to the side, all of which caused the plaintiff to drift down the stream. That had the defendant properly tied the boat at the bow, or had the cables used on the sides been good and serviceable, and not rotten and worthless cables, as they were, the said boat would never have broken away, and the damages to the plaintiff would have been averted."

It will thus be seen that the plaintiff alleges: (1) An unsafe place to work; and (2) defective appliances.

At the close of the plaintiff's testimony, the defendant moved for a nonsuit and at the close of all the testimony

moved for a directed verdict. . Both motions were refused, and the judgment was for the plaintiff, from which the defendant appealed. It was error to refuse the nonsuit, and again it was error to refuse to direct a verdict.

In order to recover for negligence, the negligence complained of must be the proximate cause of the injury. The evidence fails to show that the plaintiff would have been injured if he had remained on the boat where he agreed to work. It shows positively that the plaintiff was taken off the boat and put in a place of safety; that he voluntarily left the safe place on the island and walked into the water that wet him and caused his injury.

The plaintiff shows no cause of action, and inasmuch as the record not only. fails to show a cause of action, but shows positively that the plaintiff has no cause of action, a verdict should have been directed.

The judgment is reversed.